UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| USA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CHRISTOPHER SCHUETTE,<br><br>　　　　　　Defendant. | Case Nos.  15-cr-00316-BLF-1<br>　　　　　　　22-cr-00233-BLF-1<br><br>**ORDER DETERMINING COMPETENCY** |

The issue before the Court is whether Defendant Christopher Schuette, who has been convicted but not yet sentenced, is competent under 18 U.S.C. § 4241.  The Court held a competency hearing on October 7, 2025.  For the reasons that follow, the Court finds that Mr. Schuette is competent to be sentenced.

**I.   BACKGROUND**

On January 25, 2023, a jury convicted Defendant on one count each of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), and attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b).  22-cr-233 ECF No. 125.  In August 2023, Defendant requested, and the Court ordered, that a psychological examination of Defendant be conducted pursuant to 18 U.S.C. §§ 4241 and 4247(b).  *See* 22-cr-233 ECF No. 141 (motion for competency evaluation); 22-cr-233 ECF No. 142 (order granting motion).  In October 2023, Dr. Sudhanva Rajagopal, Psy.D., met with Defendant at Santa Rita Jail and conducted a psychological examination "for the purpose of assessing competency to proceed pursuant to 18 U.S.C. § 4241."  22-cr-233 ECF No. 151-3 ("Rajagopal Rpt.") at 1.  Dr. Rajagopal observed that Defendant ▮

▮

1  ██████████████████████████████████████████████████████

2  ████████████████████████████████████ *Id.* at 15.  Dr. Rajagopal further noted that the

3  symptoms of these disorders "impact Mr. Schuette's ability to rationally consult with his attorney

4  in preparation for sentencing, and his ability to rationally weigh the consequences of electing to

5  proceed *pro se*."  *Id.*  Based on his evaluation, Dr. Rajagopal opined that "that Mr. Schuette is not

6  competent to proceed due to symptoms of a mental disease or defect . . . that impair his ability to

7  assist properly in the preparation for his sentencing and to understand the consequences of his

8  choices regarding the sentencing proceeding."  *Id.* at 16.

9        After Dr. Rajagopal's report was filed, the Government requested, and the Court ordered, a

10  second psychological examination.  22-cr-233 ECF No. 152 (Government motion); 22-cr-233 ECF

11  No. 156 (order granting motion).  The Court then granted the parties' stipulation to appoint

12  Dr. Jessica Holliday, MD/MPH, to conduct the psychological examination of Defendant pursuant

13  to 18 U.S.C. §§ 4241 and 4247(b)–(c).  *See* 22-cr-233 ECF No. 161.  In February 2024,

14  Dr. Holliday met with Defendant at Santa Rita Jail and conducted a psychological examination to

15  assess Defendant's competency for legal proceedings pursuant to 18 U.S.C. § 4241.  22-cr-233

16  ECF No. 175-3 ("Holliday Rpt.") at 1.  Dr. Holliday similarly observed that Defendant ████

17  ██████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████

20  ████████████████████████████████ *Id.* at 1–2 (emphasis omitted).  Based on her

21  evaluation, Dr. Holliday opined that "due to his ████████████████████

22  ████ Mr. Schuette is not competent for sentencing.  He lacks the ability to rationally

23  cooperate with his attorney as a result of his symptoms, in particular, his ████████

24  ██████████████████████████████████ *Id.* at 2 (emphasis

25  omitted).

26        The Court conducted a competency hearing pursuant to 18 U.S.C. § 4247(d) on March 26,

27  2024.  The Court designated Dr. Rajagopal and Dr. Holliday as expert witnesses, and the Court

28  took their testimony.  *See* 22-cr-233 ECF No. 177 (minute order).  On May 7, Defendant appeared,

was advised of his rights, and personally waived his right to testify at the competency hearing. *See* 22-cr-233 ECF No. 185 (minute order).  After considering all of the evidence, the Court found by a preponderance of the evidence that Mr. Schuette was presently suffering from a mental disease rendering him mentally incompetent to the extent that he is unable to assist properly in his defense.  These findings were supported by the expert opinions of both Dr. Holliday and Dr. Rajagopal.

On August 15, 2024, the Court ordered that Defendant be committed to the custody of the Attorney General for hospitalization for treatment and further ordered that Defendant undergo competency restoration and evaluation under 18 U.S.C. § 4241(d).  *See* 22-cr-233 ECF No. 193 (order finding Defendant not competent for sentencing).  On March 25, 2025, the Acting Warden submitted to the Court a forensic evaluation of Defendant and a Certification of Restoration of Competency to Stand Trial.  The Forensic Evaluation was prepared and signed by Dr. Lashawn Freeman, then a Forensic Postdoctoral Fellow at the Federal Medical Center in Butner, North Carolina ("FMC Butner").  The report was based on a 120-day period of observation.

On October 7, 2025, the Court conducted a competency hearing.  *See* 22-cr-233 ECF No. 215 (minute order).  Dr. Freeman, now a Forensic Psychologist at the Federal Medical Center in Lexington, Kentucky, was the Government's sole witness.  Defendant appeared and waived his right to testify at the competency hearing after being advised of his rights.

**II.   LEGAL STANDARD**

Under Section 4241, "[w]hen the director of the facility in which a defendant is hospitalized . . . determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense[,] . . . [t]he court shall hold a hearing . . . to determine the competency of the defendant.  If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings."  18 U.S.C. § 4241; *see also Godinez v. Moran*, 509 U.S. 389, 396

(1993).

## III. EVIDENTIARY OBJECTIONS

As a threshold matter, Defense Counsel objects to the designation of Dr. Freeman as an expert. Defense Counsel pointed to her relatively recent entry into the field of psychology and further noted Dr. Freeman's lack of training focused on the neurodevelopmental disorders at issue.

The Court notes that Dr. Freeman is a licensed psychologist who holds, among other credentials, a Doctor of Psychology. She has conducted at least 30 competency evaluations, including roughly 15 evaluations under the 18 U.S.C. § 4241 framework. The Court finds that Dr. Freeman is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Court accordingly overrules the objection to the admission of Dr. Freeman as an expert. To the extent Dr. Freeman's training in relevant fields may not be as significant, the Court will take that into account when evaluating her testimony.

Defense Counsel also objects to Dr. Freeman's report and testimony under the Sixth Amendment Confrontation Clause because Dr. Freeman consulted with other experts in forming her opinion. In particular, Dr. Freeman's report references consultation and collaboration with a medical physician and a psychiatrist. Under Federal Rule of Evidence 702, an expert witness "may testify in the form of an opinion" where the testimony is, *inter alia*, "based on sufficient facts or data," "the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts." Fed. R. Evid. 702.

The Court accepts only the expert opinion of Dr. Freeman. Dr. Freeman's opinion is based on a number of factors, including interviews, a review of Mr. Schuette's records, and consultation with other professionals. The Court does not accept any other doctors' opinions as direct opinions in the case. Accordingly, the Court overrules Defense Counsel's objection to the admission of Dr. Freman's report, which was admitted as Exhibit 1 to the Competency Hearing ("Ex. 1").

## IV. DISCUSSION

### A. Summary of the Evidence

Dr. Freeman submitted a thorough report and credibly testified as to her findings. She was the lead evaluator for Mr. Schuette at FMC Butner. Over the 120-day period of observation,

1    Dr. Freeman met with Defendant 12 times, beginning with an interview at intake. She also

2    observed Defendant when she was not working with him to get a sense of his behavior while he

3    was not aware that he was being evaluated. She consulted with Defendant's psychiatrist and

4    physician, the nursing staff, and other FMC Butner professionals to obtain a more holistic picture.

5    Dr. Freeman noted that sometimes Mr. Schuette would decline to meet with her. But as they built

6    rapport, he became more agreeable and stopped refusing contact.

7    　　　　Dr. Freeman explained that Mr. Schuette's thinking and expression was organized and

8    linear. He never expressed any delusional beliefs. In general, Defendant was calm and polite. He

9    used humor. He typically spoke at an average rate and volume. Dr. Freeman noted that

10   sometimes he was frustrated and would speak quickly, particularly when talking about the legal

11   system, his legal situation, and his attorneys. She further testified that when Defendant began

12   speaking quickly, she could interrupt him. Defendant would then allow her to speak and the two

13   could engage in reciprocal conversation. He never expressed suicidal or homicidal ideations, nor

14   did he describe hallucinations. He did not appear to respond to internal stimuli. His grooming and

15   hygiene were appropriate. He was able to adapt his behavior and routine to varied situations and

16   goals.

17   　　　　Based on her evaluation of Mr. Schuette, Dr. Freeman arrived at the following ▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[1] Ex. 1 at 9. With respect to the ▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮, Dr. Freeman explained the diagnosis is used where "characteristics of a personality

21   disorder that cause clinically significant distress or impairment in social, occupational, or other

22   important areas of functioning predominate but do not meet the full criteria for any of the

23   disorders in the personality disorders diagnostic class." *Id.* Dr. Freeman observed that

24   Mr. Schuette "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* Regarding ▮▮▮▮▮▮▮▮▮, Dr. Freeman explained that Mr. Schuette

26   "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," which are classic features of the disorder. *Id.* In

---

[1] Dr. Freeman testified that "rule out" means that although there is insufficient evidence to determine that a diagnosis exists, it cannot be ruled out, either.

1    connection with ▮▮, Dr. Freeman explained that Mr. Schuette ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 9–10.  On the other hand,
4    Mr. Schuette "demonstrated the ability to adapt to institutional interactions, engage in reciprocal
5    communication with staff, understand sarcasm, and engage in appropriate peer interactions." *Id.*
6    at 10.  Accordingly, Dr. Freeman found there was "insufficient evidence to support" a diagnosis of
7    ▮▮▮, although it also could not be ruled out.  *Id.*  The Court observes that Dr. Freeman's report
8    and testimony are not in conflict with the opinions of Dr. Rajagopal and Dr. Holliday.
9    Accordingly, none of Defendant's prior diagnoses, including the diagnosis of ▮▮▮▮▮▮▮, are in
10   dispute.

11          Dr. Freeman opined that Mr. Schuette is competent to be sentenced.  The report states that
12   "Mr. Schuette currently does not suffer from a mental disease or defect that prevents him from
13   having a factual and rational understanding of the proceedings against him." *Id.* at 13.
14   Dr. Freeman concluded that "his ability to make legal decisions about his case did not appear to be
15   impaired by delusional beliefs, irrational thoughts, or cognitive deficits." *Id.*

16          **B.   Defendant's Ability to Understand the Nature and Consequences of the Proceedings**

17          The Court first considers whether Mr. Schuette is able to understand the nature and
18   consequences of the proceedings against him.  18 U.S.C. § 4241(e).  The focus of a competency
19   inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand
20   the proceedings." *Moran*, 509 U.S. at 401 n.12.

21          Dr. Freeman opined that Mr. Schuette understands the nature and consequences of the
22   proceedings.  She explained that Defendant generally understands the legal system, the role of the
23   Court, and the fact that he is at the sentencing stage of his proceedings.  He demonstrated an
24   awareness of his right to speak at sentencing and the potential risks and benefits that come with
25   the decision whether to make a statement.  He described the role of the lawyer—"to litigate" and
26   to argue "for a lesser sentence." Ex. 1 at 11.  He noted the consequences of being disruptive in the
27   courtroom.
28

On cross examination, Defense Counsel inquired about Mr. Schuette's reported misstatement about a time limit in sentencing law. Dr. Freeman noted that even if he was not correct about every detail, Defendant had a basic understanding of the stage of his case and the possible severity of a sentence.

The Court finds that Mr. Schuette's misunderstanding about the law does not mean that Mr. Schuette does not understand the nature and consequences of the proceedings. The Court further finds that the report and Dr. Freeman's testimony indicate that Defendant has an awareness of the stage of his case and possible outcomes. At the hearing, Mr. Schuette's demeanor was appropriate for the setting. Accordingly, the Court finds that Mr. Schuette understands the nature and consequences of the proceedings.

### C. Defendant's Ability to Assist Properly in His Defense

The Court turns to Mr. Schuette's ability to assist in his defense. 18 U.S.C. § 4241(e). The inquiry is whether the Defendant "can consult with his lawyer with a reasonable degree of rational understanding." *United States v. White*, 670 F.3d 1077, 1084 (9th Cir. 2012) (quoting *United States v. Dusky*, 362 U.S. 402 (1960)). The *ability* to assist in the defense is sufficient—the defendant's "choosing not to cooperate with his lawyers" does not necessarily lead to "a bona fide doubt" as to a defendant's lack of ability to do so. *Id.* at 1085.

Dr. Freeman opined that Mr. Schuette is able to assist properly in his defense. She explained that Defendant has demonstrated an ability to manage his behavior, although he may be rigid in some ways. For example, FMC Butner was locked down several times. Defendant showed an ability to adapt to changes in his routine—he did not insist on sameness. As another example, Dr. Freeman observed Defendant interacting with his peers and teaching them to play a science-fantasy game sent by his parents. She opined that such interactions with peers draw on skills that would allow Defendant to effectively collaborate with his attorneys. Dr. Freeman also explained that Mr. Schuette has demonstrated flexibility in his thinking. When he speaks very fast because he is frustrated, he can be redirected and slow down.

Moreover, Dr. Freeman testified that Mr. Schuette has demonstrated volitional control. For example, he told Dr. Freeman that he was trying not to get in trouble because a disciplinary

7

1   report could lead to a dangerousness evaluation under 18 U.S.C. § 4246.  Another example is
2   Defendant's intermittent compliance with his ▮▮▮▮ medication.[2]  Defendant has told
3   Dr. Freeman that he refused to take medication to get the attention of the staff to obtain access to
4   the phone and otherwise draw attention to institutional problems he hoped would be resolved.
5   Another time, Defendant explained that he would take his medication if she gave him information
6   in connection with his legal proceedings.  These incidents are evidence that Defendant is in control
7   of his conduct.

On cross examination, Defense Counsel asked Dr. Freeman whether the report reflects Mr. Schuette's rigidity in his thinking in connection with his legal proceedings and the legal system in general.  Defense Counsel further asked whether this rigidity would interfere with Defendant's ability to work with his lawyers.  For example, Defense Counsel suggested one of Defendant's comments could indicate his belief there was a "cover up" between the Court and his attorneys.  *See* Ex. 1 at 12.  Dr. Freeman opined that, to the contrary, the comment indicated Mr. Schuette's ability to accept information that may contradict his beliefs.  *See id.* ("If I'm wrong, I'm wrong, don't just say I'm wrong, prove that I'm wrong.  That sounds like a cover up to me.").  Taken as a whole, the comment indicates Mr. Schuette's willingness to accept that he may be wrong.

Dr. Freeman agreed that Mr. Schuette has expressed strong opinions related to the legal system and a distrust of his lawyers.  She opined that these views may make working with Mr. Schuette challenging.  Still, Dr. Freeman explained that Mr. Schuette's volitional control and capacity for flexible thinking indicates his ability to assist his attorneys if he so chooses.  Moreover, Dr. Freeman explained that Mr. Schuette has not uniformly insisted on being cynical with respect to the legal process.  For example, he expressed his ability to work well with an attorney in connection with state court proceedings in the past.

In closing, the Government argued that even if Mr. Schuette is unwilling to work with his

---

[2] Dr. Freeman testified that the medication Mr. Schuette was prescribed and took only intermittently was indicated for ▮▮▮▮▮▮.  Dr. Freeman explained that ▮▮▮▮ would not impact competency.

United States District Court
Northern District of California

lawyers, Dr. Freeman's testimony established that he has the capacity to assist in his defense. Defense Counsel argued that if Mr. Schuette is always rigid in his views with respect to the legal system, including believing that his attorneys are in a conspiracy with the Court, the Court cannot ensure that he has the ability to assist his legal team.

The Court finds that Mr. Schuette has the ability to assist in his defense. The Court acknowledges that he holds strong views with respect to the legal system. But Mr. Schuette has also shown his capacity for flexible thinking and control over his actions. Accordingly, the Court finds that he has the capacity to assist in his defense, even if he is unwilling to do so.

* * *

After careful consideration of the evidence, the Court finds by a preponderance of the evidence that Defendant has recovered to such an extent that he is able to understand the nature of the proceedings against him and effectively assist in his defense. "Mental illness does not necessarily equate to incompetence." *Grant v. Brown*, 312 Fed. Appx. 71, 73 (9th Cir. 2009). All agree that Defendant suffers from various mental disorders. The record demonstrates that Defendant is nonetheless able to understand the nature and consequences of these proceedings and assist his attorneys in his own defense. Accordingly, the Court finds that Defendant is competent to proceed.

V. **ORDER**

For the foregoing reasons, the Court HEREBY ORDERS that:

(1) Mr. Schuette has recovered to such an extent that he is competent to be sentenced;

(2) Sentencing is set for January 13, 2026 at 9:00 a.m.; and

(3) Mr. Schuette is committed to the custody of the United States Marshals.

Dated: October 20, 2025

_____
BETH LABSON FREEMAN
United States District Judge